## Case No. 5,507.

### GOHEN v. TEXAS PAC. RY. CO.

[3 Cent. Law J. 382;[1] 1 Tex. Law J. 97; 23 Int. Rev. Rec. 393.]

Circuit Court, W. D. Texas. April Term, 1876.

NEGLIGENCE—DUTY OF RAILROAD COMPANIES AS TO TRACK AND STRUCTURES — UNFORESEEN EVENTS—LIMIT OF LIABILITY—RULE OF DAMAGES.

1. It is the duty of a railroad company to lay its track and road-bed and to construct bridges, culverts and embankments in such manner, and to keep them in such condition, as to render the same safe for the public use as well as for its employees.

2. This obligation does not require it to provide against dangers which could not reasonably be foreseen, and it is not bound to secure the track against events which could not be anticipated by reasonable men, such as an unprecedented flood, or other unusual visitation. This applies most strongly to new roads.

3. If a particular structure is without fault as to plan, mode of construction and character of material, so that it was originally sufficient for all the purposes for which it was designed, and if the railroad company has it afterwards properly inspected by competent and skillful men, who exercise ordinary diligence to keep it in repair, the company has discharged its duty, and is not liable to an employee for an injury received by reason of a defect in said structure, unless it is shown that the company had actual notice of such defect, and after notice failed to remedy it.

4. Actual damages only can be recovered, and they are to be confined to the pecuniary loss sustained by the plaintiff by reason of the death of her son.

This was an action for damages brought [by Patience Gohen against the Texas Pacific Railway Company] under the act of the legislature of Texas of February 2, 1860 [Laws 1860, p. 32], which is substantially that of 9th and 10th Vict., commonly known as "Lord Campbell's Act."

[Exceptions to plaintiff's petition were overruled. Case No. 5,506.]

Robertson & Herndon, Turner & Lipscomb, and Geo. L. Hill, for plaintiff.

William Steadman and I. P. Sexton, for defendant.

DUVAL, District Judge (charging jury). The plaintiff [Patience Gohen is the mother and only surviving parent of Edward L. Gohen, who died without wife or children][2] brought this suit on the 22d day of December, 1874, to recover of the defendant damages for the death of her son, Edward L. Gohen, which occurred on the 24th of March, 1874. It appears from the evidence that at the time of the death of the said Edward L. Gohen, he was in the employment of the defendant as a fireman on a locomotive engine running over defendant's road, and that while crossing a bridge on the south side of Cypress Bayou in Harrison county, the said bridge gave way, causing the engine to be precipitated into the stream below, and killing the said Edward L. Gohen. The plaintiff avers that this accident and death was solely owing to the fault and neglect of the defendant by reason of the defective construction of said bridge, and its dumps or embankments. [It is now, however, conceded by the plaintiff's counsel in argument, that the bridge in question was, in itself, safe and sufficient, but that the accident was occasioned by an unskillful and defective construction of the dump or embankment on which the bridge rested.][2] And it is for the jury to determine from the evidence before them whether this averment is true or false. I have to instruct the jury, that in constructing and operating a railroad, the law imposed upon the defendant the obligation to make it substantial and safe [so far as human skill and foresight can do so, under the circumstances surrounding its construction. The work should be done without fault as to its plan, mode of construction, or materials used, which should be adapted to, and such as are generally used for, the purpose to which they are to be applied, so as to make it safe, not only for the public generally, but for the employees of the road, and so as to provide against all risks and dangers, of whatever sort or description, which could then be fairly foreseen or apprehended after the exercise of due and reasonable diligence, enquiry and precaution. And when a road has been thus originally constructed, the law requires the company to employ skillful and trustworthy agents to supervise, examine and test it, and to keep it in proper repair.][2] It was the duty of the defendant to lay its track and road-bed, and to construct bridges, culverts and embankments, in such manner, and to keep them in such condition, as to render the same safe for the public use, as well as for the employees of the road. This obligation, however, on the defendant, did not require it to provide against dangers which could not be reasonably foreseen; and it was not bound to secure the track against events which could not be anticipated by reasonable men, hav-

---

[1] [Reprinted by permission.]

[2] [From 1 Tex. Law J. 97.]

ing the ordinary sagacity required in the business of making railroads, such as an unprecedented flood, or other like unusual visitation or occurrence. This rule applies most strongly to all roads, when recently constructed, and before there has been sufficient time and experience to test the sufficiency and safety of the work done. [This rule applies most strongly to all roads when recently constructed in a new country, whose topography and climatic changes are not then well understood, and before there has been sufficient time and experience to test the strength and safety of the work done.][2]

On determining the liability of a railroad for defective construction of work, the correct rule to be looked to is whether such work (no matter what the particular structure may be), is without fault as to plan, mode of construction and character of material, so that it was originally sufficient for all the purposes for which it was designed, so far as could then be reasonably determined, and that it employed skilful and trustworthy agents to supervise and examine and test it, and that such duty is performed with frequency, and with such tests as custom and experience have sanctioned and prescribed. When these circumstances all concur and exist, it may be rightly assumed that the road has exercised such care and skill as the law exacts of an employer in reference to his employee, and that no liability can attach to it for a defect in such structure or work by which an employee has sustained injury, unless there has been actual notice or knowledge that such defect existed, and which, unless promptly remedied, would be liable to cause serious or fatal consequences. Tested by this rule, the jury will consider the bridge and embankment in question, and determine from all the evidence before them, whether or not they were without fault as to plan, mode of construction and character of materials, and in these respects met the purpose for which they were designed at the time of their construction, so far as could then be reasonably ascertained and determined by the agents and officers of the road who built them. If the jury came to an affirmative conclusion on these questions, and believe that the defendant employed skilful, prudent and competent agents to inspect and keep said structures in repair, and that said agents or employees did exercise ordinary and usual care and diligence in inspecting and keeping said structures in repair, and that they remained safe for the running of trains over them until the embankments were washed away by an unusual and extraordinary rise of water [such as could not have been reasonably foreseen and provided against when the road was originally constructed],[2] then you are instructed that the defendant was not guilty

of negligence, and you will find for the defendant. [Although the jury may believe, from the evidence, that there was negligence and want of care on the part of the defendant in the original construction of the embankment on which the bridge rested, yet, if they further believe from the evidence that A. E. Botto was engineer of the locomotive by the fall of which it is charged that Edward L. Gohen was killed, and that at and shortly before the time of the accident, the water in Cypress Bayou was unusually high, and that, on the evening previous to the accident, Botto was warned by said defendant, or its authority, that the water was high in the bottom, and that he should run slow over the same, and that he did not obey such warning, but did run over the same the next morning without caution, and with his usual and ordinary speed, or at a rate of speed which, under the circumstances, prevented him from having his engine under proper control, then you are instructed that such conduct on his part was negligence tending to produce the accident, and you will find for the defendant.][2] But if the jury believe from the evidence that the bridge and embankments, or either of them, were not properly made at first, either as respects plan, mode of construction or materials used, by reason of the negligence and want of care on the part of the defendant; and such defect, if subsequently known, was not provided for and remedied by means adequate to the purpose, so far as human skill and sagacity could reasonably foresee, under the circumstances then existing; and in consequence of which negligence and want of care, or failure to apply proper means of prevention on the part of defendant, the said Edward L. Gohen was killed, then you will find for the plaintiff. If the jury should find from the evidence that the defendant was guilty of negligence in the death of said Edward L. Gohen, as alleged in plaintiff's petition, they may, in fixing the amount of damages, take into consideration the age of the plaintiff, the probable duration of her life, the amount of support she might reasonably have expected to receive from the deceased, if this can be determined from the evidence. You can not consider the property or the wealth of the plaintiff, nor her mental anguish or suffering, but you can only allow such damages as you may think proportioned to the injury resulting to plaintiff from the death of her son, as appears from the evidence before you. In determining whether they will find a verdict for the plaintiff or defendant, the jury are the exclusive judges of all the facts in evidence before them. They will take into consideration the manner and mode of testifying by the witnesses; their intelligence and acquaintance with the subject about which.

[2] [From 1 Tex. Law J. 97.]                    [2] [From 1 Tex. Law J. 97.]

they testify; their interest in the result of the suit, if any, and give to each and every portion of the evidence such weight as they may think it deserves.